# EXHIBIT 1

STATE OF SOUTH DAKOTA    )
                         : SS
COUNTY OF MINNEHAHA      )

IN CIRCUIT COURT

SECOND JUDICIAL CIRCUIT

| | |
|---|---|
| LARSON MANUFACTURING COMPANY OF SOUTH DAKOTA, INC. and SUPERIOR HOMES, LLC, <br><br> Plaintiffs, <br><br> vs. <br><br> WESTERN SHOWCASE HOMES, INC., and AMERICAN MODULAR HOUSING GROUP, LLC, and AMERICAN MODULAR HOUSING GROUP, INC., and PAUL THOMAS, <br><br> Defendants. | CIV. 16_____ <br><br><br><br><br> **SUMMONS** |

THE STATE OF SOUTH DAKOTA TO THE ABOVE-NAMED DEFENDANTS, GREETINGS:

You are hereby summoned and required to answer the Complaint of the Plaintiffs in the above-entitled action, a copy of which said Complaint is hereunto annexed and herewith served upon you, and to serve a copy of your Answer to said Complaint upon the subscribers, Davenport, Evans, Hurwitz & Smith, L.L.P., at their office at P.O. Box 1030, 206 West 14th Street, in the City of Sioux Falls, South Dakota, within thirty (30) days after the service of this Summons upon you, exclusive of the day of such service; and you will hereby take notice that in case of your failure to answer said Complaint, Judgment by default may be rendered against you as requested in the said Complaint.

Dated at Sioux Falls, South Dakota, this 8th day of June, 2016.

DAVENPORT, EVANS, HURWITZ &
SMITH, L.L.P.

Vince M. Roche
Joel R. Rische
206 West 14th Street
PO Box 1030
Sioux Falls, SD 57101-1030
Telephone: (605) 336-2880
Facsimile: (605) 335-3639
vroche@dehs.com
*Attorneys for Plaintiff*

STATE OF SOUTH DAKOTA  )
                      : SS

COUNTY OF MINNEHAHA    )

IN CIRCUIT COURT

SECOND JUDICIAL CIRCUIT

| | |
|---|---|
| LARSON MANUFACTURING COMPANY OF SOUTH DAKOTA, INC. and SUPERIOR HOMES, LLC, <br><br>       Plaintiffs, <br><br>   vs. <br><br> WESTERN SHOWCASE HOMES, INC., and AMERICAN MODULAR HOUSING GROUP, LLC, and AMERICAN MODULAR HOUSING GROUP, INC., and PAUL THOMAS, <br><br>       Defendants. | CIV. 16_____ <br><br><br><br><br> **COMPLAINT** |

Plaintiffs Larson Manufacturing Company of South Dakota, Inc. ("Larson") and Superior Homes, LLC ("Superior") (together, "Plaintiffs"), for their Complaint against Western Showcase Homes, Inc. ("Western Showcase"), AmeriCAN Modular Housing Group, LLC ("AMHG, LLC"), AmeriCAN Modular Housing Group, Inc. ("AMHG, Inc.") and Paul Thomas state and allege as follows:

## FACTS RELEVANT TO ALL CLAIMS

1.     Larson is a corporation formed under the laws of South Dakota with its principal place of business in Brookings, South Dakota.

2.     Superior is a limited liability company formed under the laws of South Dakota, and is a subsidiary of Larson. Each member of Superior is a citizen of South Dakota.

3.     Superior is in the business of manufacturing and selling modular home units ("Units").

1

4.     On information and belief, Western Showcase is a corporation formed under the laws of Nevada with its principal place of business in Las Vegas Nevada.

5.     On information and belief, Western Showcase is in the business of purchasing, reselling and financing modular housing units in the United States and Canada.

6.     On information and belief, AMHG, LLC is a limited liability company formed under the laws of Nevada with its principal place of business in Las Vegas, Nevada.

7.     On information and belief, Paul Thomas is the sole member of AMHG, LLC.

8.     On information and belief, AMHG, LLC is in the business of purchasing and reselling modular housing units in the United States and Canada.

9.     On information and belief, AMHG, Inc. is a corporation formed under the laws of the province of Saskatchewan, Canada, with its principal place of business in Las Vegas, Nevada.

10.    On information and belief, AMHG, Inc. is in the business of purchasing and reselling modular housing units in the United States and Canada.

11.    On information and belief, Paul Thomas is a domiciliary of Las Vegas, Nevada, and is a citizen of the state of Nevada.

12.    On information and belief, Paul Thomas is the principal agent and owner of Western Showcase, AMHG, LLC, and AMHG, Inc. (collectively "Thomas Entities").

13.    The Thomas Entities were involved in several transactions involving the procurement and delivery of Units for customers in Canada and the United States. A Thomas Entity would purchase a Unit built to the customer's specifications from Superior and re-sell the Unit to the customer after arranging delivery and in some cases, the set and completion of the home on the customer's site.

2

14. The Thomas Entities had agreements with Superior and Larson to extend credit to the Thomas Entities in the amount of the purchase until the Thomas Entities received payment from the customers.

15. At all times relevant to the transactions in this Complaint, Thomas was engaged in a scheme to defraud Plaintiffs and others involved in the transactions described in this complaint and to convert to his own use the proceeds from the sales of the Units.

## COUNT 1: BREACH OF CONTRACT—CARLYLE UNITS
### (WESTERN SHOWCASE AND PAUL THOMAS)

16. Plaintiffs re-allege by incorporation all the allegations in this complaint.

17. On February 2, 2012, Western Showcase ordered for its customer WaughWho Developments, Inc. ("WaughWho") eight Units: C5399A, C5399B, C5399C, C5399D, C5400A, C5400B, C5400C, and C5400D for ultimate delivery to Carlyle, Saskatchewan, where they would be assembled into two four-plexes ("C5399ABCD" and "C5400ABCD," respectively or collectively, the "Carlyle Units").

18. Western Showcase accepted delivery of the units comprising C5400ABCD from Superior at Superior's Watertown, South Dakota facility on May 15, 2012.

19. At the time of delivery of C5400ABCD, Superior issued to Western Showcase an invoice showing the total cost of the Units comprising C5400ABCD to be $463,435.28.[1]

20. Western Showcase accepted delivery of the units comprising C5399ABCD from Superior at Superior's Watertown, South Dakota facility on May 17, 2012.

21. At the time of delivery of C5399ABCD, Superior issued to Western Showcase an invoice showing the total cost of the Units comprising C5399ABCD to be $461,848.78.

---

[1] Although the Units were eventually delivered to Canada, all currency in this Complaint will be expressed in U.S. Dollars unless otherwise specified.

3

22. Superior did not receive an objection to the terms of the sale as set forth in the invoice.

23. Western Showcase made a single payment of $87,082.73 for the Carlyle Units on May 29, 2012.

24. In 2013 the amounts owed to Superior were transferred and assigned to Larson.

25. Between February 14, 2014 and October 31, 2014, Larson advanced Western $181,848 in additional funds to complete on-site construction work for which Thomas agreed would be added to the amounts owed.

26. Western Showcase has not paid and refuses to pay Larson the unpaid amount due and owing for the Carlyle Units.

27. On information and belief, between July 2011 and January 2014, the Thomas Entities received $202,752,70 in payment from WaughWho relating to the sale and set of the Carlyle Units, a portion of which was intended to be remitted in payment for the Carlyle Units.

28. On information and belief, between July 2011 and January 2014, Thomas received an additional $580,226.04 (Canadian) in payment from WaughWho, a portion of which was relating to the sale of the Carlyle Units.

29. On information and belief, Thomas has converted the money received from WaughWho for his personal use.

30. Western Showcase's refusal to pay Larson for the Carlyle Units has injured Larson in the amount of $927,521 (the price of the Units other advances, less rebate) plus interest and legal fees.

4

## COUNT 2: TORTIOUS INTERFERENCE WITH A
## BUSINESS EXPECTANCY—CARLYLE UNITS
## (PAUL THOMAS)

31.     Plaintiffs re-allege by incorporation all the allegations in this complaint.

32.     WaughWho executed a Manufactured Home Bill of Sale on May 15, 2012,

evidencing the purchase of the Units comprising C5400ABCD, which Bill of Sale identified

Larson as the seller of the Units and a purchase price of $544,135.00.

33.     WaughWho also executed on May 15, 2012, an irrevocable assignment of its

rights to receive proceeds from the resale of the Units comprising C5400ABCD to customers in

favor of Superior.

34.     WaughWho executed a Manufactured Home Bill of Sale on March 14, 2013,

evidencing the purchase of the Units comprising C5399ABCD, which Bill of Sale identified

Larson as the Seller and a purchase price of $591,965.05.

35.     WaughWho also executed on May 15, 2012, an irrevocable assignment of its

rights to receive proceeds from the resale of the Units comprising C5399ABCD to customers in

favor of Superior.

36.     On information and belief, the Manufactured Home Bills of Sale and the

irrevocable assignment of rights were drafted and executed under the supervision of Laura Riffel,

an agent of AMHG, LLC for administration of certain Canadian transactions.

37.     On information and belief, Paul Thomas was aware of the Bills of Sale and the

assignments of accounts receivable executed by WaughWho in favor of Superior with respect to

the Carlyle Units.

38.     On information and belief, despite the Bills of Sale evidencing a purchase

between Larson and WaughWho and the assignments of accounts receivable, Paul Thomas

represented to Rylan Waugh, WaughWho's principal agent, that all payment for the Carlyle Units needed to be paid to Thomas or one of the Thomas Entities.

39.     On information and belief, Thomas represented to Waugh that he would forward the necessary payments received from WaughWho to Superior and Larson.

40.     On information and belief, between July 2011 and January 2014, Thomas and the Thomas Entities received $202,752.70 in payment from WaughWho relating to the sale of the Carlyle Units.

41.     On information and belief, between July 2011 and January 2014, Thomas received an additional $580,226.04 (Canadian) in payment from WaughWho, a portion of which was related to the sale of the Carlyle Units.

42.     At the direction of Thomas, the Thomas Entities used payments that WaughWho intended to be forwarded to Superior and Larson for the Carlyle Units for their own purposes and did not forward payment to either Superior or Larson for the Carlyle Units.

43.     By interfering with WaughWho's expected payments of the amounts due and owing to Superior and Larson, Thomas has injured Superior and Larson in the amount of $202,752.70 (U.S.) and $580,226.04 (Canadian), the sum of the amounts the Thomas Entities received from WaughWho.

## COUNT 3: UNJUST ENRICHMENT—CARLYLE UNITS
### (PAUL THOMAS AND THE THOMAS ENTITIES)

44.     Plaintiffs re-allege by incorporation all the allegations in this Complaint.

45.     Thomas and the Thomas Entities benefitted by receiving the Carlyle Units from Superior.

46.     Thomas and the Thomas Entities knew that Superior and Larson expected to be compensated for the conferral of such a benefit.

6

47.     At the time Thomas and the Thomas Entities received the Carlyle Units, they had a collective fair market value of $925,284.06.

48.     It would be unjust and inequitable to allow Thomas and the Thomas Entities to retain that benefit without compensating Superior and Larson.

## COUNT 4: BREACH OF CONTRACT—HEIDT UNIT
### (WESTERN SHOWCASE AND PAUL THOMAS)

49.     Plaintiffs re-allege by incorporation all the allegations in this Complaint.

50.     Western Showcase ordered from Superior Unit C5417 for ultimate delivery to customers Jennifer and Ryan Heidt ("Heidt Unit").

51.     Superior received a down payment of $21,675.00 for the purchase of the Heidt Unit.

52.     Western Showcase accepted delivery of the Heidt Unit at Superior's Watertown, South Dakota facility on June 5, 2012.

53.     At the time of delivery, Superior sent an invoice to Western Showcase outlining the final purchase price of $248,144.06.

54.     Superior received no objection to the terms of the sale as set forth in the invoice.

55.     In June 2012, the amounts owed were assigned by Superior to Larson.

56.     Western Showcase has not paid, and refuses to pay Larson the amount due and owing on the Heidt Unit.

57.     On information and belief Thomas or the Thomas Entities received payment for the Heidt Unit from the customer and Thomas has converted that payment for his personal use.

58.     As a result of Western Showcase's refusal, Larson has been injured in the amount of $201,654.65 (total price less the down payment and rebate), plus interest and legal attorney fees.

7

## COUNT 5: TORIOUS INTERFERENCE WITH A
## BUSINESS EXPECTANCY—HEIDT UNIT
## (PAUL THOMAS AND THE THOMAS ENTITIES)

59.     Plaintiffs re-allege by incorporation all the allegations in this Complaint.

60.     Jennifer and Ryan Heidt (the "Heidts") executed on June 4, 2012, a System Built Home Bill of Sale evidencing purchase of the Heidt Unit, which Bill of Sale identified Larson as the seller and a purchase price of $234,311.20.

61.     On the same day, the Heidts executed an irrevocable assignment of funds in favor of "American Modular Housing Group" and Larson.

62.     The irrevocable assignment of funds was drafted on letterhead from Guardant Investments, Inc., which upon information and belief is a corporation hired by the Thomas Entities to administer some of their Canadian transactions as agent for the Thomas Entities.

63.     Laura Riffel was the President of Guardant Investments, Inc. at the time the irrevocable assignment of funds was drafted.

64.     The irrevocable assignment of funds required that, upon release of funds from the Heidts' bank, the first $234,311.20 be wired to Guardant Investments "for the benefit of Superior Homes and AmeriCAN Modular Housing Group."

65.     On information and belief, the Heidts' attorney transferred funds to Guardant Investments or AmeriCAN Modular Housing Group to pay for the Heidt Unit, but neither Guardant Investment, nor any of the Thomas Entities forwarded any of the proceeds to Superior.

66.     As a result of the improper interference by Thomas and the Thomas Entities, Larson has been injured in the amount of $234,311.20, plus interest and legal fees.

## COUNT 6: UNJUST ENRICHMENT—HEIDT UNIT
## (THOMAS AND THOMAS ENTITIES)

67.     Plaintiffs re-allege by incorporation all the allegations in this Complaint.

8

68.    Thomas and the Thomas Entities benefitted by receiving the Heidt Unit from Superior.

69.    Thomas and the Thomas Entities knew that Superior and Larson expected to be compensated for the benefit conferred.

70.    At the time of delivery, the Heidt Unit had a fair market value of $248,144.06.

71.    Superior only received $21,675.00 for the sale of the Heidt Unit.

72.    It would be unjust and inequitable to allow Thomas and the Thomas Entities to retain the benefit conferred by Superior and Larson.

## COUNT 7: BREACH OF CONTRACT—UNIT 5334
### (WESTERN SHOWCASE AND PAUL THOMAS)

73.    Plaintiffs re-allege by incorporation all the allegations in this Complaint.

74.    Prior to June 1, 2012, Western Showcase agreed to purchase Unit C5334.

75.    Western Showcase accepted delivery of Unit C5334 on June 1, 2012 at Superior's Watertown, South Dakota facility.

76.    At the time of delivery, Superior issued to Western Showcase an invoice showing the total cost of Unit C5334 to be $123,183.64.

77.    Superior received no objection to the terms of the sale as set forth in the invoice.

78.    On June 5, 2012, Larson paid Superior for Unit C5334 and took an assignment of right to receive payment for Unit C5334 from Western Showcase.

79.    No payments have been made to Larson on the balance due and owing for Unit C5334.

80.    As a result of Western Showcase's failure to pay the balance due and owing Larson has been injured in the amount of $104,706.09 (the balance due on the Unit less rebate) plus interest and legal fees.

9

## COUNT 8: UNJUST ENRICHMENT—UNIT 5334
### (WESTERN SHOWCASE)

81. Plaintiffs re-allege by incorporation all the allegations in this Complaint.

82. Western Showcase benefitted by receiving Unit 5334 from Superior.

83. Western Showcase further benefitted from Larson making partial payment on

Western Showcase's behalf of the amount due and owing to Superior.

84. Western Showcase accepted those benefits knowing Superior and Larson

expected compensation for conferring the benefits.

85. At the time the benefits were conferred to Western Showcase, Unit 5334 had a

total fair market value of $123,183.64.

86. It would be unjust and inequitable to allow Western National to retain the benefits

conferred without compensation to Superior and Larson.

## COUNT 9: BREACH OF CONTRACT—SIMON UNIT
### (AMHG, LLC AND PAUL THOMAS)

87. Plaintiffs re-allege by incorporation all the allegations in this Complaint.

88. On October 16, 2012, Superior sent a Sales Order to AMHG, LLC for approval of

specifications and price of Unit C5468, a custom-built unit for customer Doug Simon ("Simon

Unit").

89. The purchase price on the Sales Order was $217,582.76

90. On November 26, 2012, Paul Thomas communicated acceptance of the Sales

Order for the Simon Unit through text message to Superior's agent, Barb Pierson, stating: "When

Simon [sic] go online?  Build it."

91. On information and belief, Doug Simon paid AMHG, LLC $200,000 for the

purchase of the Simon Unit and Thomas converted that payment to his personal use.

10

92.     Superior completed the home in 2013, and on May 14, 2013, sent AMHG, LLC notice that payment of $205,365.80 was due and owing.

93.     Superior received no objection to the terms of the sale as set forth in the notice.

94.     AMHG, LLC failed to make the payment due.

95.     Superior sent three additional notices to AMHG, LLC on May 21, 2013, May 28, 2013, and June 5, 2013, stating that payment on Unit C5468 was due and owing.

96.     AMHG, LLC failed and refused, and continues to fail and refuse to make the payment that is due.

97.     Unit C5468 remains at Superior's Watertown Facility.

98.     The custom specifications, including being built to Canadian building codes, makes resale of Unit C5468 at a reasonable price impracticable at this time.

99.     AMHG, LLC's refusal to pay the amount due and owing on C5468 and take delivery thereof has injured Superior in the amount of $205,365.80.

### COUNT 10: BREACH OF CONTRACT—UNITS C542HTC 1 & 2
### (AMHG, LLC AND PAUL THOMAS)

100.     Plaintiffs re-allege by incorporation all the allegations in this Complaint.

101.     On October 17, 2012, Superior sent a Sales Order to AMHG, LLC for approval of specifications and price of Unit C5452HTC 1 & 2, two custom-built Units for assembly as a duplex at the customer's site.

102.     Paul Thomas gave approval to build Units C5452HTC 1 & 2 on October 22, 2012 by sending an email to Superior's agent, Barb Pierson, in response to an inquiry regarding whether the specifications set forth in the Sales Order met with AMHG, LLC's approval.

11

103.     Units C5452HTC 1 & 2 were completed in November 2012, and Superior sent an invoice to AMHG, LLC showing the total costs due and owing on Units C5452HTC 1 & 2 to be $288,751.77.

104.     Superior received no objection to the terms of the sale as set forth in the invoice.

105.     AMHG, LLC made no payment for Units C5452HTC 1 & 2, and the Units remain at Superior's Watertown, South Dakota facility.

106.     The custom specifications, including being built to Canadian building codes, makes resale of Units C5452HTC 1 & 2 at a reasonable price impracticable at this time.

107.     As a result of AMHG, LLC's refusal to pay the amount due and owing and take delivery of Units C5452HTC 1 & 2, Superior has been injured in the amount of $259,967.89 (the amount due on the Units less rebate).

## COUNT 11: BREACH OF CONTRACT—UNIT C5383
### (AMHG, LLC AND PAUL THOMAS)

108.     Plaintiffs re-allege by incorporation all the allegations in this Complaint.

109.     Superior sent AMHG, LLC a Sales Order for approval of specifications and price of Unit C5383, a custom-built unit.

110.     On August 29, 2012, Thomas responded to an email from Superior's agent, Barb Pierson, accepting the specifications and price for Unit C5383 as set forth in the Sales Agreement by stating that it was "good to go."

111.     Superior completed Unit C5383 and on November 12, 2014 sent AMHG, LLC an invoice showing the total costs due and owing on Unit C5383 were $197,727.02 (the amount due on the Unit less rebate).

112.     Superior did not receive a written objection from AMHG, LLC to the terms of the sale as set forth in the invoice.

12

113.     AMHG, LLC did not pay Superior the amounts due and owing to Superior for

Unit C5383, and the Unit remains at Superior's Watertown, South Dakota facility.

114.     The custom specifications, including being built to Canadian building codes,

makes resale of Unit C5383 at a reasonable price impracticable at this time.

115.     As a result of AMHG, LLC's refusal to pay the amount due and owing and take

delivery of Unit C5383, Superior has been injured in the amount of $197,727.02 (the amount due

on the Unit less rebate).

### COUNT 12: BREACH OF CONTRACT—COLT UNIT
### (AMHG, LLC AND PAUL THOMAS)

116.     Plaintiffs re-allege by incorporation all the allegations in this Complaint.

117.     Paul Thomas executed a Purchase Agreement on behalf of AMHG, LLC on

February 11, 2015, agreeing to purchase from Superior a Unit for customer Colt Homes for the

price of $135,785.00 ("Colt Unit").

118.     Half the purchase price of the Colt Unit was to be paid upon execution of the

Purchase Agreement, and half was to be paid prior to delivery of the Colt Unit.

119.     AMHG, LLC failed to make the initial payment, but Superior relied upon Paul

Thomas's promise to pay and commenced construction of the Colt Unit.

120.     The Colt Unit was completed in July 2015.

121.     After completion of the Colt Unit, Superior sent AMHG, LLC an invoice showing

the total cost of the Colt Unit after accounting for changes to specifications to be $138,463.00.

122.     Superior did not receive a written objection from AMHG, LLC to the terms of the

sale as set forth in the invoice.

123.     In September, Paul Thomas promised to send by overnight delivery a check in

payment of the outstanding balance due and owing on the Colt unit.

13

124.     Superior relied on Thomas's promise of payment and allowed shipment of the

Colt Unit.

125.     AMHG, LLC did not make the promised payment on the amount due and owing

on the Colt Unit.

126.     To date, only $1,200 of the total $138,463.00 cost of the Colt Unit has been paid.

127.     As a result of AMHG, LLC's failure to pay, Superior has been injured in the

amount of $124,292.10 (the amount due on the Unit less rebate).

## COUNT 13: UNJUST ENRICHMENT—COLT UNIT
## (PAUL THOMAS & THOMAS ENTITIES)

128.     Plaintiffs re-allege by incorporation all the allegations in this Complaint.

129.     Thomas and the Thomas Entities benefitted by receiving the Colt Unit from

Superior.

130.     Thomas and the Thomas Entities knew that Superior expected to be compensated

for the conferral of such a benefit.

131.     At the time Thomas and the Thomas Entities received the Colt Unit, it had a fair

market value of $138,463.00.

132.     Upon information and belief, AMHG, LLC has received full payment from the

final customer for delivery of the Colt Unit.

133.     It would be unjust and inequitable to allow Thomas and the Thomas Entities to

retain that benefit, less the $1,200 received, without compensating Superior.

## COUNT 14: FRAUD & DECEIT—COLT UNIT
## (PAUL THOMAS)

134.     Plaintiffs re-allege by incorporation all the allegations in this Complaint.

14

135.    Thomas made a statement of fact that he had sent or had the present intention to send immediate payment for the amount due and owing on the Colt Unit.

136.    Thomas knew that statement to be false at the time it was made.

137.    Thomas made the statement with the intent to induce Superior to rely on the statement and allow shipment of the Colt Unit.

138.    As a result of Thomas's deceit, Superior allowed shipment of the Colt Unit and was thereby injured in the amount of $124,292.10 (the amount due on the Unit less rebate).

### COUNT 15: BREACH OF CONTRACT—STEPHENSON UNIT
### (AMHG, LLC AND PAUL THOMAS)

139.    Plaintiffs re-allege by incorporation all the allegations in this Complaint.

140.    Sandy Stephenson wired AMHG, Inc. $36,000.50 as a down payment on a Unit.

141.    AMHG, Inc. wired Superior $31,000.00 as a down payment for the purchase of a Unit for Stephenson and ordered Unit C5544 ("Stephenson Unit"), and on information and belief Thomas converted the remaining $5,000.50 to his personal use.

142.    Paul Thomas executed a Purchase Agreement on November 15, 2014, evidencing AMHG, LLC's purchase of the Stephenson Unit from Superior.

143.    The Stephenson Unit was completed in December 2014, and an invoice setting forth the final purchase price of $150,041.00 was sent to AMHG, LLC on December 9, 2014.

144.    Superior did not receive an objection to the final terms of the sale as set forth in the December 9, 2014 invoice.

145.    AMHG, LLC accepted delivery of the Stephenson Unit on January 19, 2015.

146.    $119,041.00 remains due and owing for the purchase of the Stephenson Unit, and AMHG, LLC has not paid, and continues to refuse to pay, that amount.

15

147.   As a result of AMHG, LLC's refusal to pay the amount due and owing on the

Stephenson Unit, Superior has been injured in the amount of $104,232.90 (the amount due on the

Unit less rebate).

## COUNT 16: UNJUST ENRICHMENT—STEPHENSON UNIT
## (AMHG, LLC)

148.   Plaintiffs re-allege by incorporation all the allegations in this Complaint.

149.   AMHG, LLC benefitted by receiving the Stephenson Unit from Superior.

150.   AMHG, LLC knew that Superior and Larson, its successor in interest, expected to

be compensated for the conferral of such a benefit.

151.   At the time AMHG, LLC received the Stephenson Unit, it had a fair market value

of $150,041.00.

152.   It would be unjust and inequitable to allow AMHG, LLC to retain that benefit

without compensating Superior $119,041.00, which constitutes the fair market value of

$150,041.00 less the $31,000.00 Larson received.

## COUNT 17: CONVERSION—ASPEN UNITS
## (AMHG, LLC AND PAUL THOMAS)

153.   Plaintiffs re-allege by incorporation all the allegations in this complaint.

154.   Superior supplied to AMHG, LLC ten Units in 2012 to be assembled into two

five-plexes at the Aspen Village Properties development in Regina, Saskatchewan (Aspen

Units).

155.   The total sales price for the Aspen Units was $2,003,633.83.

156.   The purchase price was funded by Larson under a credit agreement between

Western Showcase and Larson whereby Larson would advance funds to develop real estate in

16

which Western Showcase had an interest.  Western in turn paid AMHG, LLC for the Aspen Units.

157.  On information and belief, AMHG, LLC received payments for the Aspen Units from the final customers at the closing of the sales from October 2012 through October 2013.

158.  Larson had a right to receive said payments from the final customers.

159.  On information and belief, AMHG, LLC, Western Showcase and Thomas interfered with Larson's receipt of said payments and converted the payments for their own use.

160.  As a result of AMHG, LLC, Western Showcase, and Thomas's conversion of said payments, Larson has been injured in an amount to be proven at trial.

### COUNT 18: FRAUD AND DECEIT—ASPEN UNITS
### (PAUL THOMAS)

161.  Plaintiffs re-allege by incorporation all the allegations in this complaint.

162.  Thomas made representations of fact to Larson that he would collect and forward to Larson the proceeds received for sale of the Aspen Units to which Larson was entitled.

163.  At the time Thomas made said representations of fact, he knew or had reasonable grounds for believing them not to be true.

164.  Thomas made said representations of fact with the intent to induce Larson to fund the purchase of the Aspen Units.

165.  Larson relied on said representations of fact and funded AMHG, LLC's purchase of the Aspen Units.

166.  As a result of Thomas's deceit, Aspen has been injured in an amount to be proven at trial.

## COUNT 19: FRAUD AND DECEIT
## (PAUL THOMAS)

167.    Plaintiffs re-allege by incorporation all the allegations in this complaint.

168.    Over the course of the dealings between the Thomas Entities and Plaintiffs,

Thomas made representations of fact asserting his intention to perform his and the Thomas

Entities' obligations under the respective contracts and asserting that the Thomas Entities were

able to pay such obligations.

169.    Thomas made those representations of fact with the intent to induce Plaintiffs'

reliance on those representations and allow manufacturing and shipment of Units without

prepayment and advances of cash to the Thomas Entities.

170.    Plaintiffs in fact relied on those representations, and as a result were injured in an

amount to be proven at trial.

## COUNT 20: CONVERSION
## (THOMAS AND THE THOMAS ENTITIES)

171.    Plaintiffs re-allege by incorporation all the allegations in this complaint.

172.    Thomas, personally and through the Thomas Entities, took possession and control

of money and personal property of Plaintiffs.

173.    Thomas's possession and control of the money and personal property was

inconsistent with Plaintiffs' rights of possession.

174.    Plaintiffs were harmed by Thomas's actions interfering with their property rights

in an amount to be proven at trial.

## COUNT 21: PIERCING THE CORPORATE VEIL

175.    Plaintiffs re-allege by incorporation all the allegations in this complaint.

18

176.    Allowing Thomas and any other John Doe owners of Western Showcase, AMHG,

LLC, and AMHG, Inc., if they exist, to shield themselves behind the corporate veil of Western

National, AMHG, LLC, and AMHG, Inc., would defeat public convenience and would sanction

a fraud and wrongdoing.  Accordingly, the Court should disregard the corporate forms of

Western Showcase, AMHG, LLC, and AMHG, Inc., and hold Thomas and any other owners

personally liable for those entities' debts.

WHEREFORE Plaintiffs respectfully request the following relief:

A.    That Judgment be entered against Defendants and in favor of Plaintiffs in the

amounts due and owing on the contracts and all other damages proven at trial;

B.    That Judgment be entered granting Plaintiffs pre- and post-judgment interest,

punitive damages, attorneys' fees, and all other such relief as this Court finds just and equitable.

Dated at Sioux Falls, South Dakota, this 8th day of June, 2016.

DAVENPORT, EVANS, HURWITZ &
SMITH, L.L.P.

Vince M. Roche
Joel R. Rische
206 West 14th Street
PO Box 1030
Sioux Falls, SD 57101-1030
Telephone:  (605) 336-2880
Facsimile:  (605) 335-3639
vroche@dehs.com
*Attorneys for Plaintiff*