UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| LARSON MANUFACTURING COMPANY OF SOUTH DAKOTA, INC., SUPERIOR HOMES, LLC, | 4:16-CV-04118-VLD |
| Plaintiffs, | |
| vs. | ORDER DENYING DEFENDANTS' MOTION TO QUASH |
| WESTERN SHOWCASE HOMES, INC., AMERICAN MODULAR HOUSING GROUP, LLC, AMERICAN MODULAR HOUSING GROUP, INC., PAUL THOMAS, | Docket No. 28 |
| Defendants. | |

**INTRODUCTION**

This matter is before the court on the basis of diversity jurisdiction, 28 U.S.C. § 1332, after defendants removed the matter from South Dakota state court. See Docket No. 1, 1-1. The parties have consented to this magistrate judge handling their case pursuant to 28 U.S.C. § 636(c). Now pending is defendants' motion to quash a subpoena served on US Bank by plaintiffs. See Docket No. 28. Plaintiffs oppose the motion. See Docket No. 34.

**FACTS**

**A.    Background Facts and Claims**

The court states the following facts from plaintiffs' amended complaint in order to evaluate defendants' pending motion. Plaintiff Larson Manufacturing

Company of South Dakota, Inc. (Larson) is the parent company of plaintiff Superior Homes, LLC (Superior).  See Docket No. 1-6 at 4.  Both are South Dakota business entities.  Id.  Superior is in the business of manufacturing and selling modular homes.  Id.

Defendant Western Showcase Homes, Inc. ("Western") is a Nevada corporation in the business of purchasing, reselling, and financing modular homes.  Id. at 5.  Defendant Paul Thomas, a Nevada resident, is the sole member of American Modular Housing Group, LLC (AMHG, LLC), a Nevada company in the business of buying and reselling modular homes.  Id.  American Modular Housing Group, Inc. (AMHG, Inc.), is a Canadian corporation with its principal place of business in Nevada that also buys and resells modular homes.  Id.  Thomas is the principal agent and owner of both AMHG entities.  Id.

The defendant entities purchased modular homes from Superior and then re-sold those homes to customers, sometimes arranging for delivery, set and completion of the home at the customer's location.  Id.  Larson and Superior extended credit to the defendant entities for these purchases; AMHG would then repay the loans when its customer paid the defendant entities.  Id. at 6.

The complaint recites that defendant entities placed orders for 26 modular homes with plaintiffs.  Plaintiffs constructed the homes.  Of the homes that were delivered to defendants, full payment was never made even though the complaint alleges the ultimate customers who received these homes paid defendants.  Other modular homes ordered by defendants were custom-built and never delivered because defendants never paid for the homes.  As to the homes plaintiffs retain

possession of, plaintiffs allege the custom nature of the homes makes resale of the homes at a reasonable value impracticable.

In addition, Larson entered into a loan agreement with Western which was guaranteed by AMHG, Inc. This loan agreement ultimately encompassed $14 million in funds. Larson alleges that Western defaulted on the loan and AMHG, Inc. refused to pay pursuant to its guarantee. For all these matters, plaintiffs assert eight counts of breach of contract, five counts of unjust enrichment, two counts of tortious interference with business expectancy, three counts of fraud, two counts of conversion, one count each of debt and guarantee, and one count of piercing the corporate veil. In particular, plaintiffs allege defendant Thomas converted money received from third parties intended for plaintiffs to his own personal use. See Docket No. 1-6 at p. 4, ¶ 29; p. 7, ¶ 57; p. 10, ¶ 91; p. 15, ¶ 141; p. 17, ¶ 159; and p. 20, ¶¶ 187-190.

Defendants generally deny nearly all of plaintiffs' allegations in their amended complaint. See Docket No. 6 at 1-16. In addition, defendants assert five counterclaims against Larson and Superior. Id. at 17-27. Those counterclaims include breach of contract (failure to pay rebates, failure to pay personal loans from Thomas); unjust enrichment (rebates, warranty and service fees); tortious interference with business expectancy (Aspen Links Country Club, Aspen Village Properties, and Waugh Who Developments); breach of contract (manufacturing defects in modular homes); and fraud and deceit (fraudulent inducement to sign a mortgage in connection with Aspen Village and McKenzie Lane, assignment of mortgage interest in Moose Ridge). See Docket No. 6 at pp. 17-27. Defendants

3

seek compensatory and punitive damages on their counterclaims, pre- and post-judgment interest, attorney's fees, and other remedies. Id. at 27.

The dates of the business transactions alleged by plaintiffs in their amended complaint go back as far as July, 2011, and extend into the year 2016. See Docket No. 1-6.

**B.      Subpoena *Duces Tecum* and Motion to Quash**

On June 15, 2017, plaintiffs' counsel served non-party US Bank with a subpoena *duces tecum* seeking the following:

> All non-privileged account records relating to any financial accounts of [defendant] Paul Dean Thomas; Western Showcase Homes, Inc.; American Modular Housing Group, LLC; and/or American Modular Housing Group, Inc., held, maintained, or controlled with US Bank and any of its parent, subsidiary, and sister entities.

See Docket No. 30-1. US Bank was to have produced the requested documents to plaintiffs' counsel on July 15, 2017. Id.

After receiving the subpoena, US Bank inquired of plaintiffs' counsel as to the dates of the documents requested. See Docket No. 35-1. Plaintiffs' counsel voluntarily limited the documents requested under the subpoena to documents created January 1, 2012, up to the present. Id. US Bank notified plaintiffs' counsel on June 26, 2017, that the documents responsive to the subpoena were located and ready to be produced. US Bank never objected to the subpoena.

Defendants moved to quash the subpoena July 13, 2017. See Docket No. 28. Defendants assert they have standing to so move because they have a personal right or privilege with regard to the requested documents. See Docket No. 29. Defendants move to quash the subpoena because it is overly broad,

4

unduly burdensome, and not limited in time nor subject matter so as to reasonably lead to evidence which is admissible in this action. Id.

## DISCUSSION

**A.     Provisions of Rule 45**

Rule 45 of the Federal Rules of Civil Procedure allows a party to serve a subpoena for the production of documents on a nonparty, with notice to the other parties in the litigation. See FED. R. CIV. P. 45(a). The nonparty on whom the subpoena is served must be protected from undue burden or expense. Id. at subsection (d)(1).

A subpoena *must* be quashed or modified if it requires the disclosure of privileged or other protected matter if there is no exception or waiver applicable, or if the subpoena subjects a person to undue burden. Id. at subsection (d)(3)(A). A subpoena *may* be quashed or modified to protect a person affected by a subpoena if the subpoena requires disclosure of a trade secret or other confidential research, development, or commercial information. Id. at subsection (d)(3)(B).

"Ordinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action, unless the objecting party claims some personal right or privilege with regard to the documents sought." Charles A. Wright, Arthur R. Miller, Mary K. Kane, Richard L. Marcus, A. Benjamin Spencer, and Adam Steinman, 9A Fed. Prac. & Proc. Civ. § 2459 (3d ed. April, 2017) (hereinafter "Fed. Prac. & Proc. Civ."). As with other discovery, the relevancy issue at the time a subpoena is served is broad—the court does not

evaluate whether the evidence sought is admissible, but rather whether the information is relevant to a claim or defense and is nonprivileged. Id. The court also considers whether the information is likely to lead to the discovery of admissible evidence. Id. The party seeking to quash a subpoena bears the burden of demonstrating grounds for quashing it. Id.

**B.     Whether the Subpoena Should be Quashed or Modified**

   **1.     Standing**

Generally, a party to a lawsuit does not have standing to seek to quash a subpoena directed to a non-party—that power lies with the non-party. See Smith v. Frac Tech Servs., Ltd., 2010 WL 3522395 at *1 (E.D. Ark. Sept. 1, 2010); Herff Jones, Inc. v. Oklahoma Graduate Servs., Inc., 2007 WL 2344705 at *3 n.4 (W.D. Ok. Aug. 15, 2007). However, when the party seeking to challenge the subpoena has a personal right or privilege in the subpoena, an exception has been made. Smith, 2010 WL 3522395 at *1; Herff Jones, Inc., 2007 WL 2344705 at *3 n.4. Rule 45 specifically grants the court discretion to quash or modify a subpoena when confidential information is involved. See FED. R. CIV. P. 45(d)(3)(B). Here, defendants clearly have a personal right in the confidential nature of their financial documents. Schmulovich v. 1161 RT. 9 LLC, 2008 WL 4572537 at *4 (D.N.J. Oct. 14, 2008); Herf Jones, Inc., 2007 WL 2344705 at *3 n.4. Accordingly, the court concludes they have standing to challenge the subpoena. See also Winter v. Bisso Marine Co., Inc., 2014 WL 3778833 at **1-2 (E.D. La. July 29, 2014).

## 2. Overbroad

Defendants argue that plaintiffs' subpoena is overbroad because it contains no limits in time or subject matter. The court is at a loss to determine how US Bank would sort defendants' financial records by subject matter. Defendants make no suggestion in this regard. The court rejects this as a basis for limiting or quashing the subpoena.

Plaintiffs voluntarily limited the scope of their subpoena to the period from January 1, 2012, to the present. Apparently, US Bank was able to easily compile documents answering this description and prepare them to be produced. The plaintiffs' complaint contains allegations relating to business transactions dating back to July, 2011. With plaintiffs' voluntary limitation on the time period applicable to the subpoena, the court finds the subpoena is not overbroad.

## 3. Undue Burden

The objection that a subpoena poses an undue burden is for the nonparty served with the subpoena to assert. US Bank has not objected to the subpoena. It is not for defendants to state whether it is an undue burden on US Bank to produce the requested documents. Furthermore, the fact that US Bank was able to compile the documents well in advance of the due date on the subpoena also informs the court's conclusion that the subpoena was not an undue burden on US Bank.

### 4. Relevancy

As pointed out in the FACTS section of this opinion, *supra*, plaintiffs have made multiple allegations that defendant Thomas has converted monies to his own personal use that were supposed to be routed to plaintiffs. Thomas is the principal agent and owner of both AMHG entities. Thus, the court finds the US Bank records are relevant to plaintiffs' claims.

### CONCLUSION

It is hereby

ORDERED that defendants' motion to quash [Docket No. 28] is DENIED, with the caveat that US Bank shall produce only those documents responsive to the plaintiffs' subpoena falling within the time period from January 1, 2012, to the present.

DATED this 29th day of September, 2017.

BY THE COURT:

*Veronica L. Duffy*
VERONICA L. DUFFY
United States Magistrate Judge