UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| LARSON MANUFACTURING COMPANY OF SOUTH DAKOTA, INC., SUPERIOR HOMES, LLC,<br><br>    Plaintiffs/Counterclaim Defendants,<br><br>vs.<br><br>AMERICAN MODULAR HOUSING GROUP, LLC and PAUL THOMAS,<br><br>    Defendants,<br><br>and WESTERN SHOWCASE HOMES, INC. and AMERICAN MODERN HOUSING GROUP, INC.<br><br>    Defendants/Counterclaim Plaintiffs. | 4:16-CV-04118-VLD<br><br><br>ORDER DENYING DEFENDANTS' MOTION TO QUASH SUBPOENAS<br><br>Docket No. 54 |

**INTRODUCTION**

This matter is before the court on the basis of diversity jurisdiction, 28 U.S.C. § 1332, after defendants removed the matter from South Dakota state court. See Docket No. 1, 1-1. The parties have consented to this magistrate judge handling their case pursuant to 28 U.S.C. § 636(c). Now pending is defendants' motion to quash subpoenas. See Docket No. 54. Plaintiffs oppose the motion. See Docket No. 65.

**FACTS**

**A.   Background Facts and Claims**

The court states the following facts from plaintiffs' second amended complaint in order to evaluate defendants' pending motion.  Plaintiff Larson Manufacturing Company of South Dakota, Inc. (Larson) is the parent company of plaintiff Superior Homes, LLC (Superior).  See Docket No. 58 at p. 1.  Both are South Dakota business entities.  Id.  Superior is in the business of manufacturing and selling modular homes.  Id. at p. 2.

Defendant Western Showcase Homes, Inc. ("Western") is a Nevada corporation in the business of purchasing, reselling, and financing modular homes.  Id. at p. 2.  Defendant Paul Thomas, a Nevada resident, is the sole member of American Modular Housing Group, LLC (AMHG, LLC), a Nevada company in the business of buying and reselling modular homes.  Id.  American Modular Housing Group, Inc. (AMHG, Inc.), is a Canadian corporation with its principal place of business in Nevada that also buys and resells modular homes.  Id.  Thomas is the principal agent and owner of both AMHG entities.  Id.

The defendant entities purchased modular homes from Superior and then re-sold those homes to customers, sometimes arranging for delivery, set and completion of the home at the customer's location.  Id. at pp. 2-3.  Larson and Superior extended credit to the defendant entities for these purchases; AMHG would then repay the loans when its customer paid the defendant entities.  Id. at p. 3.

2

The second amended complaint recites that defendant entities placed orders for fourteen modular homes with plaintiffs. Plaintiffs constructed the homes. Of the homes that were delivered to defendants, full payment was never made even though the complaint alleges the ultimate customers who received these homes paid defendants. Other modular homes ordered by defendants were custom-built and never delivered because defendants never paid for the homes. As to the homes plaintiffs retain possession of, plaintiffs allege the custom nature of the homes makes resale of the homes at a reasonable value impracticable.

In addition, Larson entered into a loan agreement with Western which was guaranteed by AMHG, Inc. This loan agreement ultimately encompassed $14 million in funds. Larson alleges that Western defaulted on the loan and AMHG, Inc. refused to pay pursuant to its guarantee. For all these matters, plaintiffs assert three counts of breach of contract, two counts of fraud, two counts of conversion, one count each of debt and guarantee, and one count of piercing the corporate veil.[1] Plaintiffs also allege defendant Thomas converted

---

[1] The plaintiffs' first amended complaint contained several additional claims. See Docket 1-6. During the course of this litigation in federal court, however, the parties reached a settlement agreement regarding several of the claims contained within the first amended complaint and the defendants' counterclaims against the plaintiffs which were associated with those settled claims. As a result of the settlement agreement, the parties agreed to dismiss the affected claims/counterclaims in this lawsuit. Plaintiffs eventually moved to compel enforcement of the settlement agreement (Docket 31), and the court granted that motion. Docket 50. Thereafter, the plaintiffs filed their second amended complaint, which appears to have deleted the claims which are the subject of the settlement agreement. Docket 58. Likewise, the defendants filed their amended counterclaim, which appears to have deleted the counterclaims which are the subject of the settlement agreement. Docket 57.

money which was received from third parties and intended for plaintiffs, but was instead used by Mr. Thomas for his own personal use. See Docket No. 58 at ¶¶ 15, 20, 49- 51.

In their answer to the second amended complaint, defendants generally deny nearly all of plaintiffs' allegations. See Docket No. 62. Defendants Western Showcase, Inc., and American Modular Housing Group, Inc., assert five counterclaims against Larson and Superior. Docket No. 57. Those counterclaims include breach of contract (failure to pay rebates, failure to repay personal loans from Thomas and failure to provide future promised business); unjust enrichment (rebates, warranty and service fees); tortious interference with business expectancy (Aspen Links Country Club and Aspen Village Properties); breach of contract (manufacturing defects in modular homes); and fraud and deceit (fraudulent inducement to sign a mortgage in connection with Aspen Village and McKenzie Lane, assignment of mortgage interest in Moose Ridge, fraudulent building practices ). See Docket No. 57 at pp. 7-9. Defendants/counterclaim plaintiffs Western Showcase, Inc. and AMHG, Inc. seek compensatory and punitive damages on their counterclaims, pre- and post-judgment interest, attorney's fees, and other remedies. Id. at 9.

The dates of the business transactions alleged by plaintiffs in their second amended complaint go back as far as April, 2012, and extend into the year 2016. See Docket No. 58.

4

**B.    Subpoenas Subject To The Motion to Quash**

Counsel for defendants has submitted a declaration (Docket No. 56) summarizing the subpoenas served by the plaintiffs which are the subject of the defendants' motion to quash.  They are as follows:

- American Express (Docket 56-1)
- Barclay's (Docket 56-2)
- Bank of America, N.A. (Docket 56-3)
- Capital One Bank, N.A. (Docket 56-4)
- Capital One, N.A. (Docket 56-5)
- Citibank, N.A. (Docket 56-6)
- City National Bank (Docket 56-7)
- Wells Fargo Bank, N.A. (Docket 56-8).

(hereinafter "the subpoenas.").

Each of the subpoenas requests the non-privileged financial records from January 1, 2012, through December 1, 2017, pertaining to:

- Paul D. or Wendy G. (Smith) Thomas;
- Western Showcase Homes, Inc.;
- American Modular Housing Group, LLC and/or;
- American Modular Housing Group, Inc.

Plaintiffs' counsel served the above-described non-parties with subpoenas *duces tecum* seeking the following:

> 1.    All non-privileged account records which are held, maintained, or controlled with [the named entity] and any of its parent, subsidiary, and sister entities for the period of January 1, 2012 to the present relating to **any accounts** of the following:  Paul Dean Thomas or Wendy G. (Smith) Thomas; 1463 Graystone Canyon, Las Vegas, NV 89183; Western Showcase Homes, Inc.; American Modular Housing Group, LLC; and/or American Modular Housing Group, Inc.,
>
> (For identifying purposes, the above entities also have the address of 1463 Graystone Canyon.)

2. All records for every **open or closed account bearing the signatory** authority of and/or in the name of **Paul Dean Thomas** for the period of January 1, 2012 to the present. Documents to be included, but not limited to:
    A. Applications for credit;
    B. Monthly statements;
    C. Receipts;
    D. Transaction summaries;
    E. Charge tickets;
    F. Imaging;
    G. Documents (bank checks, personal checks, money orders, wire transfers in, etc.) reflecting payments on the account(s); and
    H. Correspondence files.

(emphasis in originals). See Docket Nos. 56-1 through 56-8. The subpoena directed toward Citibank, N.A. also included potential bank account and credit card account numbers. Docket 56-6. The entities were to have produced the requested documents to plaintiffs' counsel on or before December 1, 2017. Id.

Defendants moved to quash the subpoenas on November 22, 2017. See Docket No. 54.

The defendants urge the court to quash these subpoenas because, they argue, the information sought is sensitive financial information which is not proportional to the needs of the case, is not likely to lead to the discovery of admissible evidence, is not relevant, and is overbroad. The defendants further request a protective order prohibiting the plaintiffs from serving additional financial-based subpoenas in this matter without further order from the court.

The plaintiffs resist the motion. Plaintiffs assert the information sought by the eight subpoenas is relevant to their claims that defendant Paul Thomas used his business accounts for personal expenses, thereby converting for his own use payments received from modular home buyers that should have been

forwarded to Larson under the credit agreement. Plaintiffs further assert the information will show money advanced under the credit agreement that was supposed to be used for real estate development projects was likewise funneled through the Thomas entities' business accounts by Paul Thomas for his personal use.

The plaintiffs allege the eight subpoenas are proportional to the needs of the case and are not overbroad. To support their argument and claims, the plaintiffs provide the affidavit of counsel (Docket 64)[2] with eighteen attachments, consisting primarily of information obtained through an earlier subpoena of financial information from U.S. Bank.

Plaintiffs also assert the records they wish to obtain will support not only their fraud allegations, but will also justify piercing the corporate veil (count 10 of the second amended complaint) by proving money from the Thomas entities' business accounts was intermingled with the personal accounts of Mr. Thomas and his wife, Wendy (Smith) Thomas. In support of this allegation, Plaintiffs offer up copies of checks written on the Thomas entities' business accounts that appear to be for personal items, and they offer up copies of checks which they claim were written and signed by Mr. Thomas but are on his wife's

---

[2] Plaintiffs repeatedly refer to counsel's affidavit in support of their argument in resistance to defendants' motion to quash. The affidavit (Docket 64) was filed in the court's electronic filing system in opposition to the defendants' motion for judgment on the pleadings. As explained in this court's order regarding that motion, Docket 64 was not considered for purposes of the motion for judgment on the pleadings. Docket 64 has been fully considered, however, for purposes of Docket 54, the defendants' motion to quash.

personal checking account and which are made out to the Thomas entities' business account(s).

## DISCUSSION

### A. The Scope Of Permissible Discovery

Federal Rule of Civil Procedure 26(b)(1) sets forth the scope of discovery in civil cases pending in federal court:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within the scope of discovery need not be admissible in evidence to be discoverable.

See FED. R. CIV. P. 26(b)(1). Rule 26 contains specific limitations relative to electronic discovery and other objections to providing discovery:

> (B) *Specific Limitations on Electronically Stored Information.* A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify the conditions for the discovery.
>
> (C) *When Required.* On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>
> > (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source

>               that is more convenient, less burdensome, or less
>               expensive;
>       (ii)    the party seeking discovery has had ample opportunity
>               to obtain the information by discovery in the action; or
>       (iii)   the proposed discovery is outside the scope permitted by
>               Rule 26(b)(1).

See Fed. R. Civ. P. 26(b)(2)(B) and (C).

The scope of discovery under Rule 26(b) is extremely broad. See 8 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2007, 36-37 (1970) (hereinafter "Wright & Miller"). The reason for the broad scope of discovery is that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession." 8 Wright & Miller, § 2007, 39 (quoting Hickman v. Taylor, 329 U.S. 495, 507-08, 67 S. Ct. 385, 392, 91 L. Ed. 2d 451 (1947)). The Federal Rules distinguish between discoverability and admissibility of evidence. Fed. R. Civ. P. 26(b)(1), 32, and 33(a)(2) & (c). Therefore, the rules of evidence assume the task of keeping out incompetent, unreliable, or prejudicial evidence at trial. These considerations are not inherent barriers to discovery, however.

"Relevancy is to be broadly construed for discovery issues and is not limited to the precise issues set out in the pleadings. Relevancy ... encompass[es] 'any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" E.E.O.C. v. Woodmen of the World Life Ins. Society, 2007 WL 1217919 at *1 (D. Neb. March 15, 2007) (quoting Oppenheimer Fund, Inc. v. Sanders, 437

9

U.S. 340, 351 (1978)).  The party seeking discovery must make a "threshold showing of relevance before production of information, which does not reasonably bear on the issues in the case, is required."  Id. (citing Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1993)).  "Mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case."  Id. (citing Cervantes v. Time, Inc., 464 F.2d 986, 994 (8th Cir. 1972)).

Discoverable information itself need not be admissible at trial; rather, the defining question is whether it is within the scope of discovery.  See FED. R. CIV. P. 26(b)(1).  Additionally, the court may limit the frequency and extent of discovery.  See FED. R. CIV. P. 26(b)(2); see also Roberts v. Shawnee Mission Ford, Inc., 352 F.3d 358, 361 (8th Cir. 2003) ("The rule vests the district court with discretion to limit discovery if it determines, inter alia, the burden or expense of the proposed discovery outweighs its likely benefit."); Continental Illinois Nat'l Bank & Trust Co. of Chicago v. Caton, 136 F.R.D. 682, 684-85 (D. Kan. 1991) ("All discovery requests are a burden on the party who must respond thereto.  Unless the task of producing or answering is unusual, undue or extraordinary, the general rule requires the entity answering or producing the documents to bear that burden.").

**B.    Provisions of Rule 45**

Rule 45 of the Federal Rules of Civil Procedure allows a party to serve a subpoena for the production of documents on a nonparty, with notice to the

other parties in the litigation.  See FED. R. CIV. P. 45(a).  The nonparty on whom the subpoena is served must be protected from undue burden or expense.  Id. at subsection (d)(1).

A subpoena *must* be quashed or modified if it requires the disclosure of privileged or other protected matter if there is no exception or waiver applicable, or if the subpoena subjects a person to undue burden.  Id. at subsection (d)(3)(A).  A subpoena *may* be quashed or modified to protect a person affected by a subpoena if the subpoena requires disclosure of a trade secret or other confidential research, development, or commercial information.  Id. at subsection (d)(3)(B).

"Ordinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action, unless the objecting party claims some personal right or privilege with regard to the documents sought."  9A Wright & Miller, § 2459 (3d ed. April, 2017).  As with other discovery, the relevancy issue at the time a subpoena is served is broad—the court does not evaluate whether the evidence sought is admissible, but rather whether the information is relevant to a claim or defense and is nonprivileged.  Id.  The court also considers whether the information is likely to lead to the discovery of admissible evidence.  Id.  The party seeking to quash a subpoena bears the burden of demonstrating grounds for quashing it.  Id.

**C.     Whether the Subpoena Should be Quashed or Modified**

　　**1.     Standing**

Generally, a party to a lawsuit does not have standing to seek to quash a subpoena directed to a non-party—that power lies with the non-party. See Smith v. Frac Tech Servs., Ltd., 2010 WL 3522395 at *1 (E.D. Ark. Sept. 1, 2010); Herff Jones, Inc. v. Oklahoma Graduate Servs., Inc., 2007 WL 2344705 at *3 n.4 (W.D. Ok. Aug. 15, 2007). However, when the party seeking to challenge the subpoena has a personal right or privilege in the subpoena, an exception has been made. Smith, 2010 WL 3522395 at *1; Herff Jones, Inc., 2007 WL 2344705 at *3 n.4. Rule 45 specifically grants the court discretion to quash or modify a subpoena when confidential information is involved. See FED. R. CIV. P. 45(d)(3)(B). Here, defendants clearly have a personal right in the confidential nature of their financial documents. Schmulovich v. 1161 RT. 9 LLC, 2008 WL 4572537 at *4 (D.N.J. Oct. 14, 2008); Herf Jones, Inc., 2007 WL 2344705 at *3 n.4. Accordingly, the court concludes they have standing to challenge the subpoena. See also Winter v. Bisso Marine Co., Inc., 2014 WL 3778833 at **1-2 (E.D. La. July 29, 2014).

　　**2.     Relevancy**

As pointed out in the FACTS section of this opinion, *supra*, plaintiffs have made multiple allegations that defendant Thomas has converted monies to his own personal use that were supposed to be routed to plaintiffs. Mr. Thomas is the principal agent and owner of both AMHG entities.

Nevertheless, defendants assert that the information requested by the subpoenas is not relevant to any of the claims or defenses in the pending lawsuit. This is so because, the defendants argue, the plaintiffs should be able to determine the merits of their claims from obtaining access to the defendant corporate financial records alone—they need not delve into Mr. and Mrs. Thomas's personal financial records as well.

The plaintiffs counter that they should be allowed to examine not only the corporate financial records, but also the Thomas's personal financial bank accounts and credit card records. In support of their position, the plaintiffs urge that in addition to the breach of contract, fraud and conversion causes of action in their second amended complaint, they have also claimed they should be allowed to pierce the corporate veil. The plaintiffs assert that because one of the claims in their second amended complaint is that they should be allowed to pierce the corporate veil in order to recover any damages awarded to them at trial against not only the named corporate entities but also Mr. Thomas personally, they should be allowed to discover Mr. Thomas's personal financial information in addition to the corporate financial information. "A corporation shall be considered a separate legal entity until there is *sufficient reason* to the contrary." Baatz v. Arrow Bar, 452 N.W.2d 138, 141 (S.D. 1990) (citing Mobridge Community Industries, Inc. v. Toure, Ltd., 273 N.W.2d 128 (S.D. 1978)) (emphasis in original). Under South Dakota law, the factors to consider when determining whether to pierce the corporate veil are:

- Fraudulent representation by corporation directors;
- Undercapitalization

- Failure to observe corporate formalities;
- Absence of corporate records;
- Payment by the corporation of individual obligations;
- Use of the corporation to promote fraud, injustice, or illegalities.

Id. Plaintiffs assert that because they have already shown evidence of payment by the corporation of individual obligations, they should be able to proceed with discovery as to the remainder of these factors regarding whether they should be able to pierce the corporate veil.

Additionally, in support of their need for the information subject to the subpoenas, plaintiffs cite the following evidence, which was unearthed through the discovery of the defendants' corporate financial records:

- The Western Showcase Homes, Inc. business checking account shows $6,400 was made in cash withdrawals in November, 2014 (Docket 64-1, pp. 3-5);

- The Western Showcase Homes, Inc. account shows transfers of money to the AMHG account and Mr. Thomas's personal account (Docket 64-1, pp. 3-5);

- The Western Showcase, Homes, Inc. account shows payments towards Mr. Thomas's personal (non-American Express) credit cards (Docket 64-1, pp. 3-5);

- In December, 2013, Mr. Thomas bought a 1975 Corvette automobile for himself from Salvatore Torresco with funds from Western Showcase Homes, Inc.'s checking account (Docket 64-2);

- Charges appear on a February, 2015, AMHG, LLC US Bank Visa credit card statement showing $15,000 in jewelry purchases (Docket 64-9, p. 4);

- Mr. Thomas wrote checks totaling $107,900 to a Las Vegas casino on AMHG, LLC and Western Showcase Homes, Inc. checking accounts during a two-month time span in 2017 (Docket 64-18, pp. 1-25);

- Two checks were written in December, 2016, on Wendy G. Smith's Citibank N.A. bank account—one payable to American Modular Housing

Group for $4,500 and one payable to Western Showcase Homes for $1,250 (both with a memo stating "service/warranty");

- The Western Showcase Homes, Inc. account shows $40,413.99 was used from that account in April, 2015, to pay Mr. Thomas's American Express credit card bill (Docket 64-3, p. 3).

Though the records that are currently within the plaintiffs' possession show the "back and forth" of funds between the accounts held by Western Showcase Homes, Inc., AMHG, LLC, Paul Thomas, and to some extent Wendy (Smith) Thomas, they do not show for what purpose the funds which were being transferred were being used. For example, the payment by Western Showcase Homes, Inc. to Mr. Thomas's American Express credit card in April, 2015 and his other personal credit card account in November, 2014, is only half the equation. The other half is "what charges were on Mr. Thomas's American Express credit card bill and his other personal credit card bill, for which the Western Showcase Homes, Inc. money was used to pay?" Were they related to the business of Western Showcase Homes, Inc. or the development of real estate under the credit agreement or were they the personal expenses of Mr. Thomas? In their brief, the defendants assert that even if the records are received there would be no way to tell whether the charges or payments were made for business or personal expenses. This court disagrees. At least for credit card bills, the charges are itemized (see e.g. the February, 2015, AMHG, LLC US Bank Visa credit card statement which indicates the $15,000 in purchases on the card for that month were for "jewelry supplies."). And, as illustrated by the December, 2013, check written by Mr. Thomas on the Western Showcase Homes, Inc. account to buy himself a Corvette, memo notes

are often written on checks to memorialize the purpose of the purchase. Docket 64-2, p. 1. See also e.g., Docket Nos. 64-13, pp. 1-2; 64-18, pp. 5-8. For this reason, plaintiffs assert, Mr. Thomas's personal American Express credit card and other personal credit card *itemized billing statements* are relevant and/or are likely to lead to the discovery of admissible evidence. The court agrees. The same holds true for the other personal bank account and credit card information requested. The court concludes the information the plaintiffs seek in the eight subpoenas is relevant to the claims and defenses presented in the pending lawsuit.

### 3. Proportionality

The defendants explain that recently, a "substantial" portion of this pending lawsuit has been resolved, and as such, the need for discovery of the defendants' financial information has likewise been substantially, if not entirely diminished in light of the markedly narrowed scope of the lawsuit. The plaintiffs' service of the eight subpoenas requesting financial information from not only corporate but also personal accounts, is, according to the defendants, therefore not proportionate to the needs of the case pursuant to Fed. R. Civ. P. 26(b)(1).

Thirteen of the claims from the first amended complaint have disappeared from the second amended complaint, and the plaintiffs seek $1,402,407 less in damages as a result of the settlement. With the exception of their tortious interference and unjust enrichment claims, the plaintiffs articulated the same causes of action in the second amended complaint

(breach of contract, conversion, fraud and deceit, debt, guarantee, piercing the corporate veil) as they did in the first amended complaint. The second amended complaint nevertheless continues to seek over *fourteen million dollars* in damages—despite the recent resolution of a portion of the claims contained in the first amended complaint.

The proportionality reference in Rule 26(b)(1) explains that the court should decide whether a discovery request is proportional "considering the importance of the issues at stake in the action, *the amount in controversy*, the parties' relative access to relevant information, the parties' resources, the importance of the information in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit . . . See Rule 26(b)(1) (emphasis added).

Over fourteen million dollars in damages and ten causes of action remain contested by the allegations which remain in plaintiffs' second amended complaint. Though thirteen causes of action and $1,402,407 in damages have been resolved, the defendants have access to the requested information and the plaintiffs do not. The need for ongoing discovery is not entirely diminished or markedly narrowed. See also, Rasby v. Pillen, 2016 WL 6078312 (D. Neb., October 17, 2016) (plaintiff's requests for business and personal financial records from defendant were relevant and proportional, where plaintiff asserted defendant used company assets for personal benefit and fraudulent misrepresentation). The court concludes the information the plaintiffs seek

17

through the eight subpoenas is proportional to the needs of the pending lawsuit.

## 4. Overbreadth

Finally, the defendants assert the information the plaintiffs seek through the subject subpoenas is overbroad because it seeks (1) Mr. Thomas's credit card records in addition to bank account records and; (2) Mrs. Thomas's financial information; and (3) information stretching past the last date which plaintiffs extended credit to the defendants under the credit agreement (March 31, 2016). The court rejects all of these arguments.

The court has already explained why Mr. Thomas's credit card documentation and Mrs. Thomas's financial information are discoverable. The subpoenas were dated October 18, 2017, and requested financial information from January 1, 2012, "to the present." The last time plaintiffs allege they extended credit to the defendants was March 31, 2016. The second amended complaint also alleges, however, that as a result of the defendants' fraud, deceit, and default, over fourteen million dollars remains due and owing to the plaintiffs, with interest continuing to accrue. The complaint also alleges Paul Thomas converted money intended for the plaintiffs to his own use. There is no "end date" on these allegations. The court concludes the information the plaintiffs seek through the eight subpoenas is not overbroad.

## D. Protective Order

The plaintiffs argue and the defendants acknowledge confidential information produced as a result of the subject subpoenas should be protected

from unfettered public dissemination.  To date, it appears the parties' efforts to agree upon terms of a suitable protective order have not been fruitful.  The court urges the parties to try again and to present the court with an order for the court's approval.  Plaintiffs' request for any such order to contain a blanket prohibition against further subpoenas directed at plaintiffs' financial information is denied.

## CONCLUSION

It is hereby

ORDERED that defendants' motion to quash [Docket No. 54] is DENIED, with the caveat that the information provided to the plaintiffs as a result of the subject subpoenas shall be subject to a protective order to be agreed upon by the parties and approved by the court.

DATED this 30th day of January, 2018.

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge