UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| LARSON MANUFACTURING COMPANY OF SOUTH DAKOTA, INC., SUPERIOR HOMES, LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>WESTERN SHOWCASE HOMES, INC., AMERICAN MODULAR HOUSING GROUP, LLC, AMERICAN MODULAR HOUSING GROUP, INC., PAUL THOMAS,<br><br>Defendants. | 4:16-CV-04118-VLD<br><br>ORDER DENYING DEFENDANTS' MOTION FOR LETTERS ROGATORY<br><br>[DOCKET NO. 139] |

**INTRODUCTION**

This matter is pending before the court pursuant to defendants' removal of the action from South Dakota state court. Jurisdiction is premised on diversity of citizenship of the adverse parties and an amount in controversy in excess of $75,000. See 28 U.S.C. § 1332. The parties have consented to this court's handling of their case pursuant to 28 U.S.C. § 636(c). Now pending is a

motion by defendants for letters rogatory to parties in Canada. See Docket No. 139. Plaintiffs oppose the motion in part. See Docket No. 143.

**FACTS**

This case arises out of contracts between plaintiffs and defendants for the production and sale of modular housing units by plaintiffs to defendants and related financing agreements. A more complete recitation of the facts is contained in this court's order denying the parties' cross-motions for partial summary judgment. See Docket No. 142. The facts from that earlier opinion are incorporated herein by reference.

Plaintiffs' original complaint contained 21 counts involving nine separately-named projects. See Docket No. 1-1. Midway through this litigation, the parties settled the claims relating to five of those projects so that the remaining claims concern only four projects, plus some free-standing claims of debt, guarantee, fraud and deceit, conversion, and piercing the corporate veil. The housing projects still being litigated herein are the [Doug] Simon Unit, Units C5452HTC 1 & 2, Unit 5383, and the Aspen project. See Docket No. 58. The claims related to the following projects have been settled: the Carlyle Units (Waugh Who), the Heidt Unit, Unit 5334, the Colt Unit, and the Stephenson Unit. Defendants have asserted various counterclaims against plaintiffs. See Docket No. 57.

In addition to the present litigation pending before this court, there are at least four lawsuits pending in Canada. Two of those cases, like this one, were

begun in 2016 and two were initiated in 2017.[1] The parties and claims being litigated in Canada are as follows.

In Larson Manufacturing Co. v. Aspen Village Properties Ltd., QBG 16-2044, plaintiff herein Larson Manufacturing Company of South Dakota, Inc. is suing Aspen Village Properties Ltd., the Canada Revenue Agency, and various contractors or subcontractors seeking to foreclose its mortgage interest in the Aspen project.

In Jahnke v. Thomas, QBG 16-2125, Gregory Jahnke, the principal in the Aspen properties, is suing defendant herein Paul Thomas, and Craig Johnson, Dale Larson, and Jeffrey Ries, the latter three of which are principals in plaintiffs herein. The subject of that lawsuit involves the credit agreement and mortgages involved in the Aspen project.

In Western v. Aspen Village Properties, Ltd., QBG 17-2616, plaintiff herein Western Showcase Homes, Inc. is suing Aspen Village Properties, Ltd.; Aspen Village Developments, Ltd.; Aspen Creek Developments Ltd.; and Gregory Jahnke, the principal behind the Aspen entities. The subject matter of that suit is apparently enforcement of the sales agreement related to the Aspen project.

In Mauri-Gwyn v. Larson Manufacturing Co., QBG 17-2404, plaintiff Mauri Qwyn (of which Gregory Jahnke is the principal) is suing plaintiff herein Larson Manufacturing Co. of South Dakota, Inc. and defendant herein

---

[1] The court is not aware whether the 2016 cases in Canada were begun before or after this one.

3

American Modular Housing Group, Inc. seeking an accounting upon the sale of condominiums by Larson and AMHG.

## DISCUSSION

### A. Motion for Letters Rogatory

The defendants now seek to obtain letters rogatory to allow certain discovery in Canada as follows:

> 1. to Al Stevers to produce documents concerning consulting services or work he performed on the Aspen project. See Docket No. 139-1.
>
> 2. to Aspen Creek Developments, Ltd. to produce documents concerning Aspen Creek Developments' dealings with Superior Homes, LLC; Larson Manufacturing of South Dakota, Inc.; Western Showcase Homes, Inc.; AmeriCan Modular Housing Group, Inc.; AmeriCan Modular Housing Group, LLC; and Paul Thomas relating to the Aspen project. See Docket No. 139-2.
>
> 3. to Aspen Village Developments, Ltd. to produce documents concerning its dealings concerning Aspen Village Developments, Ltd.; Superior Homes, LLC; Larson Manufacturing of South Dakota, Inc.; Western Showcase Homes, Inc.; AmeriCan Modular Housing Group, Inc.; AmeriCan Modular Housing Group, LLC; and Paul Thomas relating to the Aspen project. See Docket No. 139-3.
>
> 4. to Aspen Village Properties, Ltd. to produce documents concerning its dealings concerning Aspen Village Properties, Ltd.; Superior Homes, LLC; Larson Manufacturing of South Dakota, Inc.; Western Showcase Homes, Inc.; AmeriCan Modular Housing Group, Inc.; AmeriCan Modular Housing Group, LLC; and Paul Thomas relating to the Aspen project. See Docket No. 139-4.
>
> 5. to Darren Matity to produce documents concerning work he performed in connection with the Aspen project. See Docket No. 139-5.
>
> 6. to Gregory Jahnke, principal of the Aspen entities, to produce documents and to appear for a video-taped oral deposition concerning Aspen Village Properties, Ltd.; Aspen Village Developments, Ltd.; Aspen Creek Developments, Ltd.; Superior Homes, LLC; Larson Manufacturing of South Dakota, Inc.; Western

Showcase Homes, Inc.; AmeriCan Modular Housing Group, Inc.; AmeriCan Modular Housing Group, LLC; and Paul Thomas relating to the Aspen project. See Docket No. 139-6.

7. to Mauri Gwyn Development, Ltd. to produce documents concerning its dealings concerning Mauri Gwyn Development, Ltd.; Superior Homes, LLC; Larson Manufacturing of South Dakota, Inc.; Western Showcase Homes, Inc.; AmeriCan Modular Housing Group, Inc.; AmeriCan Modular Housing Group, LLC; and Paul Thomas relating to the Aspen project. See Docket No. 139-7.

8. to McKercher, LLP to produce documents concerning the receipt and distribution of funds relating to the Aspen project. See Docket No. 139-8.

9. to Rylan Waugh to produce documents concerning dealings among Superior Homes, LLC; Larson Manufacturing of South Dakota, Inc.; Waugh Who Developments, Inc.; Western Showcase Homes, Inc.; AmeriCan Modular Housing Group, Inc.; AmeriCan Modular Housing Group, LLC; and Paul Thomas relating to the Aspen project. See Docket No. 139-9.

10. to Waugh Who Developments, Inc. to produce documents concerning dealings among Superior Homes, LLC; Larson Manufacturing of South Dakota, Inc.; Waugh Who Developments, Inc.; Western Showcase Homes, Inc.; AmeriCan Modular Housing Group, Inc.; AmeriCan Modular Housing Group, LLC; and Paul Thomas relating to the Aspen project. See Docket No. 139-10.

11. to the Town of White City, Saskatchewan to produce documents concerning plaintiffs, the Aspen Entities, or the Western Entities placing liens on properties or communications with those entities. See Docket No. 139-11.

Plaintiffs oppose defendants request for these letters rogatory. See Docket No. 143. As to the Gregory Jahnke deposition (number 6 above), plaintiffs point out that the parties agreed to a limit on depositions and allowing the Jahnke deposition would exceed that agreed-upon limit. As to the Jahnke deposition, plaintiffs also argue the cost and burden of attending Jahnke's deposition in Canada would be disproportionate to the issues at

stake, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery, and the likely benefit from the discovery. In addition, plaintiffs point out that whether Aspen performed under its agreement with defendants is not relevant to these proceedings and the issue of whether the collateral is sufficient to cover the amount of defendants' debt is likewise a distinct issue from whether defendants owe the debt.

As to the Waugh Who letters rogatory (numbers 9 & 10 above), plaintiffs object on the grounds that their original claims involving Waugh Who are among those claims that the parties have settled and are no longer a part of this lawsuit. Finally, plaintiffs object to the "facts" section contained in each of the proposed letters as not constituting a neutral and objective statement of the facts.

Although the scope of discovery is broad, it is defendants' burden as the parties seeking these letters rogatory to demonstrate the relevance of the requested discovery. See FED. R. CIV. P. 26(b)(1) advisory committee's note; E.E.O.C. v. Woodmen of the World Life Ins. Society, 2007 WL 1217919 at *1 (D. Neb. March 15, 2007) (citing Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1993)). "Mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case." Id. (citing Cervantes v. Time, Inc., 464 F.2d 986, 994 (8th Cir. 1972)).

In their initial three-page motion, defendants only state "certain individuals and certain entities located in Canada . . . may have information that will aide these proceedings." See Docket No. 139 at p. 1. That hardly satisfies defendants' burden to demonstrate initial relevancy.

In their 11-page reply, defendants argue the Jahnke deposition is relevant, pointing out the centrality of the Aspen project to the parties' dispute in this case. Defendants also argue the deposition is not unduly burdensome. Defendants analogize a deposition trip to Canada as no more burdensome than a similar trip to Las Vegas. This, of course, overlooks several salient differences such as (1) a trip to Canada requires everyone attending from the United States to have a passport whereas a trip to Nevada does not and (2) the law of Canada, unlike the federal law applicable in the District of Nevada, may differ significantly from the law applicable to discovery in this case.

Defendants offer to reschedule one of their existing depositions to meet the six-deposition limit agreed upon by the parties, but it is not clear they are offering to forego any presently-anticipated depositions. Defendants also represent they will work with plaintiffs to arrive at a statement of facts in the letters which is agreeable to both parties. Finally, defendants argue the Waugh Who letters rogatory are necessary to determine if there was a pattern of poor warranty, installation or servicing by plaintiffs in regard to their products.

Neither party addresses the four pending Canadian lawsuits. Those lawsuits appear to involve, in one way or another, all the parties herein as well as all of the Aspen entities. Presumably, the plaintiffs and defendants in this

case have access to discovery under Canadian rules through their participation in the four Canadian lawsuits. None of the parties explain to this court why letters rogatory are necessary and why discovery in the ordinary course in those Canadian lawsuits is not sufficient to allow the parties access to the persons, documents and information described in the letters rogatory. Furthermore, none of the parties outline the scope of discovery allowable in Canada and whether the requested letters rogatory exceed that scope. Such information would clearly raise comity concerns.

The court notes that one of the letters rogatory requested by defendants (number 11 above) is to a Canadian town, an entity that presumably is protected in some way and to some degree by the concept of sovereign immunity. No mention is made of the rules of Canadian discovery or other Canadian law which might apply to discovery from a political subdivision in a foreign country.

The advisory committee's notes to Rule 28, the rule pertaining to letters rogatory, suggests examination of the law and policy of the foreign country is a prerequisite in advance of attempting to conduct discovery there. See FED. R. CIV. P. 28, advisory committee's note to 1963 amendment (citing 4 Moore's Fed. Prac., §§ 28.05-28.08 (2d ed. 1950). The advisory committee also states that a party wishing to take a deposition in a foreign country ordinarily is "obliged to conform to an applicable treaty or convention." Id. advisory committee's note to 1993 amendment (citing Société Nationale Industrielle Aérospatiale v. United

8

States District Court, 482 U.S. 522 (1987)).  Defendants discuss neither the applicable foreign law nor any applicable treaty in their motion.

Rule 26(b)(1) allows the court to limit discovery if it determines that the discovery sought is unreasonably cumulative or duplicative or that "the burden or expense of the proposed discovery outweighs its likely benefit…"  See FED. R. CIV. P. 26(b)(1); see also Roberts v. Shawnee Mission Ford, Inc., 352 F.3d 358, 361 (8th Cir. 2003) ("The rule vests the district court with discretion to limit discovery if it determines, inter alia, the burden or expense of the proposed discovery outweighs its likely benefit."); Continental Illinois Nat'l Bank & Trust Co. of Chicago v. Caton, 136 F.R.D. 682, 684-85 (D. Kan. 1991).

Here, the court notes defendants' motion comes at the eleventh hour.  This case has been pending for nearly 3 years.  The Canadian lawsuits have been pending approximately that long too.  A trial date here has been set.  The discovery deadline is approaching fast.  Defendants have not carried their burden to show that the letters rogatory are necessary given the existence of the Canadian lawsuits nor have they shown the letters conform to Canadian law and are allowed under applicable treaty.  These facts, as well as the unanswered questions regarding whether the letters rogatory would contravene Canadian discovery rules, leads this court to conclude the motion is not well-placed.

## CONCLUSION

Based on the foregoing law, facts and analysis, it is hereby

ORDERED that defendants' motion for letters rogatory to parties in Canada [Docket No. 139] is denied.

DATED January 4, 2019.

BY THE COURT:

VERONICA L. DUFFY

United States Magistrate Judge